# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| JENNIFER WRENE MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  CV414-081 |
| | ) | |
| CAROLYN COLVIN, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Alleging disability due to Asperger's syndrome, attention deficit disorder, central auditory processing disorder and other maladies, Jennifer Wrene Marshall seeks judicial review of the Social Security Commissioner's denial of her Child Insurance Benefits (CIB) based on disability and Supplemental Security Income (SSI).   Doc. 1 at 1.[1]

## I.  GOVERNING STANDARDS

In social security cases, courts:

---

[1]   The Court is citing to its docketing software's pagination; it may not always line up with each paper document's printed pagination.

review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (quotation omitted).

*Mitchell v. Commissioner, Soc. Sec. Admin.,* 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the ALJ applies

a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at

step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience.[1]   *Id.* § 404.1520(a)(4)(v). An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 2015 WL 106620 at * 1 (11th Cir. Jan. 15, 2015) (footnote added).

A CIB "claimant must show that she is the child of an individual who is entitled to old-age or disability insurance benefits and is dependent on the insured, is unmarried, and was under a disability as defined in the Act that began before [s]he attained the age of twenty-two." *Solomon v. Colvin*, 2013 WL 3778447 at * 3 (S.D. Ala. July 18, 2013); *see also Bzadogh v. Comm'r of Soc. Sec.*, 2015 WL 627704 at * 5 (D.N.J. Feb. 9, 2015) (same criteria applied, concluding: "Plaintiff simply has not carried her burden of proving the severity of her disability prior to the age of twenty-two.");

---

[1]   At steps four and five the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012).   "The ALJ makes the RFC determination based on all relevant medical and other evidence presented.   In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Social Sec.*, 2015 WL 859830 at * 4 (11th Cir. Mar. 2, 2015) (quotes and cite omitted).

42 U.S.C. §§ 402(d)(1), 423(d)(1)(A); 20 C.F.R. § 404.350(a)(5).

## II.  BACKGROUND

Marshall applied for CIB and SSI benefits in 2010, claiming disability commencing on or about April 1, 2008, but seeking benefits from May 28, 2010. Doc. 8-2 at 27, 45; doc. 1 at 1. Following administrative denial, she (then aged 21) attended a 2012 hearing before an Administrative Law Judge (ALJ). Doc. 8-2 at 42, 47. He denied her application and that was upheld by the SSA's Appeals Council. Doc. 8-2 at 9-11, 36.

The ALJ determined that Marshall had not attained the age of 22 before her claimed disability onset date, April 1, 2008. Doc. 8-2 at 29. Nor had she engaged in substantial gainful activity since that date. *Id.* She suffers "the following severe impairments: Asperger's syndrome; attention deficit hyperactive disorder (ADHD); and central auditory processing disorder (20 CFR 404.1520(c)and 416.920(c))." *Id.* at 29-30.

That brought her to step three, where the ALJ determined that she does not have a severe enough impairment that met SSA guidelines. *Id.* at 30. Thus, the ALJ proceeded to step four, which required that he first

4

determine her RFC to perform work at all exertional levels. As noted *supra* n. 1, RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440; *Harris v. Colvin*, 2014 WL 5844240 at * 6 (S.D. Ala. Nov. 12, 2014). Once the ALJ determines an RFC, the claimant must show (as Marshall argues here) that it is not supported by substantial evidence. *Harris*, 2014 WL 5844240 at * 6.

Here the ALJ found that Marshall had an RFC that enabled her to perform work at all exertional levels subject to some mental limitations. Doc. 8-2 at 32-34. There was no past relevant work that she could return to (another step four criteria), so the ALJ proceeded to step five and consulted a Vocational Expert (VE). Responding to the ALJ's hypothetical questions, the VE opined that she could perform available, "light/unskilled" jobs like a file clerk,[2] mail clerk or a laundry worker.

---

[2] "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he

Doc. 8-2 at 35, 75-76.

Relying on the VE's testimony, which the ALJ found to be "consistent with the information contained in the Dictionary of Occupational Title," doc. 8-2 at 35; *see also id.* at 76 (the VE testified to that end), the ALJ found that Marshall could adjust to other work existing in significant numbers in the national economy and, therefore, she was not disabled. *Id.* at 34-36; *see* 20 C.F.R. § 404.1520(a)(4)(v) ("At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.").

## III. ANALYSIS

After presenting a comprehensive recitation of her mental health and other records from February 2001 onward,[3] Marshall insists that

---

or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b); *Tapley v. Colvin*, 2015 WL 764022 at * 1 n. 1 (S.D. Ga. Feb. 23, 2015).

[3] Doc. 10 at 2-6 (describing Kevin Winders, M.D's treatment for, *inter alia*, Asperger's

the ALJ failed to properly weigh the medical evidence and determine her RFC. Doc. 10 at 13. Boiled down, she contends that the ALJ erroneously "cherry picked" no-disability evidence while ignoring disability-proving evidence. And most of that contention goes to the ALJ's failure, she contends, to properly weigh treating doctors' records and findings. *Id.* at 13-20. He compounded those errors, she further contends, by failing to make appropriate credibility findings. *Id.* at 20-24.

An ALJ must accord substantial weight to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do

Disorder, ADHD, central auditory processing disorder (CAPD) and pervasive developmental disorder (PDD) -- basically, processing and emotional inabilities interweaved with behavioral and socializational disorders); *id.* at 6 (describing Jerald Gottlieb, Ph.D's therapy); *id.* at 7-9 (detailing Patrice Butterfield, Ph.D's 5-session, 2010-2011 treatment noting her "very poor" social judgment, "extreme" social anxiety, poor memory and decision-making skills, etc., concluding that claimant would never be able to function outside of a sheltered environment; Marshall would not be able to remember and carry out detailed instructions, abide work procedures, etc.); *id.* at 9-10 (noting 2009 evaluation by Aaron Anderson, Ed. S. - Examining School Pyschologist, who determined she was in "the average range of basic reading and written expression skills" but "had academic weaknesses in math reasoning, math calculations and reading comprehension"); *id.* at 10 (noting evaluation by Thomas Pedigo, Ed. D, for "academic and behavioral problems," and testing revealed "average range" intelligence but ADHD-type deficits such as impulsivity, concentration problems and the like). She also cites her own and her mother's testimony to show that she is mired in unemployability behaviors such as hypersensitivity, crying, focusing deficits, and the like. *Id.* at 11-12.

otherwise. *Lewis*, 125 F.3d at 1440; *Farkas v. Astrue*, 2012 WL 750547 at

* 6 (M.D. Fla. Mar. 8, 2012). There is good cause when the:

> (1) treating physician's opinion was not bolstered by the evidence;
> (2) evidence supported a contrary finding; or (3) treating physician's
> opinion was conclusory or inconsistent with the doctor's own
> medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41
> (11th Cir. 2004). Therefore, if a treating physician's opinion on the
> nature and severity of a claimant's impairments is well supported by
> medically acceptable clinical and laboratory diagnostic techniques,
> and is not inconsistent with the other substantial evidence in the
> record, the ALJ must give it controlling weight. 20 C.F.R. §
> 404.1527(d)(2).

*Farkas*, 2012 WL 750547 at * 6.

"Generally, the opinions of examining physicians are given more

weight than those of non-examining physicians, treating physicians are

given more weight than those of physicians who examine but do not treat,

and the opinions of specialists are given more weight on issues within the

area of expertise than those of non-specialists." *McNamee v. Soc. Sec.

Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006). And *non*-examining,

consultative physicians are due the least weight, though the regulations

still require that the ALJ consider their opinions and determine that

weight based upon their consistency with the evidence of record. 20

C.F.R. § 404.1527(f); *see also Tapley*, 2015 WL 764022 at * 3 ("As a general

rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record.") (cite omitted).

Marshall specifically complains that the ALJ gave "no weight" to the opinions of treating psychologist Patrice Butterfield and treating physician Kevin J. Winders -- of the "Savannah Psychiatry" practice group. Doc. 10 at 14. "The ALJ erred," she contends, "by rejecting every single medical opinion in the record." *Id.* at 15. And she insists that theirs "are medical opinions, not bald legal opinions on disability." *Id.*

The record authorized the ALJ to reject the Butterfield and Winders opinions. At the hearing he expressly cited his review of their records and even paused to explain his assessment, for example, of Butterfield's opinion: "I can't give any weight to Dr. Butterfield's assessment that she's in the [Global Functioning Score[4]] 40s when her

---

[4]  "The Global Assessment Functioning [GAF] Scale considers the psychological, social, and occupational functioning of an individual suffering from mental illness. While the Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings.," *see* 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000), the score is "useful in planning treatment" and tracking an individual's rehabilitative progress. SEE AMERICAN

own treating psychiatrist [Winders] gives her between 60 and 75. That, that would -- that makes no sense . . . so, you know, I mean she puts in, you know, the claimant's sweet and innocent and those types of remarks. You know, she's trying to help her out. I understand that, but I'm not sure there's anything else to it than that . . . ." Doc. 8-2 at 48. His written opinion elaborated, noting the disparity between Butterfield's assessment and the rest of the medical record (e.g., a 40 GAF versus a 65 GAF assigned by Dr. Winders) and found that "she is clearly trying to help the claimant obtain disability benefits." Doc. 8-2 at 33.

Also at the hearing, the ALJ pointed out that Marshall successfully completed a comprehensive, 2009 psychological evaluation:

PSYCHIATRIC ASSOCIATION: DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 30 (4th ed. 1994)." *Chesire v. Colvin*, 2013 WL 6038715 at * 3 n. 6 (M.D. Ala. Nov. 14, 2013).

In that regard, GAF scores "of 41 to 50 indicate serious symptoms (suicidal ideation, severe obsessional rituals, or frequent shoplifting) or any serious impairment in social, occupational, or school functioning (having no friends or being unable to keep a job). . . ." *Hurst v.* Colvin, 2014 WL 6603876 at * 4 (S.D. Ga. Nov. 19, 2014). GAFs "of 51 to 60 indicate moderate symptoms (flat affect and circumstantial speech or occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (having few friends or conflicts with peers or coworkers). *See Stone v. Comm'r of Soc. Sec.*, No. 13–12414, 2014 WL 4784117, at *2 n. 2 (11th Cir. Sept. 26, 2014) (citing AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32, 34 (Text Revision 4th ed.2000))." *Tapley*, 2015 WL 764022 at * 7.

"She was able to complete it, persevere for the entire evaluation so --

she also did not need redirection; although, looking at the 1F

psychological evaluation, she did not need redirection, but the math

section took longer than average." Doc. 8-2 at 62; *see also* doc. 8-2 at

60 (details of that examination); *id.* at 68 (ALJ noting that for that

examination claimant "was in a pleasant mood, demonstrated an open,

cooperative attitude, rapport was easily established and maintained

over the course of the evaluation. She sustained attention for task

demands, did not exhibit overly active or fidgety behavior, wasn't

frustrated with prolonged mental effort, seemed adequately challenged,

put forth average effort and perseverance, and she did fairly well on

testing, so we have – another evaluation – or well, this was the IEP I

believe. Based on school records, she has a good sense of humor, able

to make small talk, didn't need redirection.").[5]

In 2011 Dr. Winders wrote (and Marshall greatly emphasizes

this): "I do not feel that [Marshall] is capable of maintaining gainful

---

[5] None of these "evidence weighing" statements by the ALJ have been shown to be unsupported by the record, or otherwise not properly considered in determining Marshall's RFC.

employment." Doc. 8-8 at 95. He preceded that *conclusion*[6] with just six sentences, relating that he had been treating her since 2001, listing her current diagnosis ("Asperger's Disorder, [ADHD], Anxiety Disorder not otherwise specified, [CAPD], and obstructive sleep apnea"), and noting their longevity and permanency. He did not, however, discuss any residual capacity nor explore in any detail what she could and could not do in the vast ocean of jobs in the national economy. The ALJ did, as was his job to expressly analyze and weigh Winders' own medical records. Doc. 8-2 at 32 (noting that Winders had repeatedly given her 60-75 range GAF scores, had himself noted that claimant "was doing fairly well," etc.).

Marshall insists that the ALJ "cherry-picked some normal findings from the record that no medical authority has suggested are relevant while ignoring other abnormalities that are consistent with the restrictions described by the treating specialists." Doc. 10 at 16. The ALJ's opinion, as supported by the record, shows otherwise. In

---

[6] "Notably, a physician's statement that an individual is incapacitated or disabled is not dispositive." *Hacia v. Comm'r of Soc. Sec.*, 2015 WL 408186 at * 3 (11th Cir. Feb. 2, 2015).

fact he provided multiple reasons why, in weighing the record evidence, he rejected Dr. Winders' conclusion. *See e.g.,* doc. 8-2 at 32 ("Another psychiatric questionnaire at Exhibit 14F indicates that, despite giving [Marshall] a GAF score of 60, Dr. Winders also gave all kinds of findings[,] including psychomotor agitation, etc. and indicated the claimant had no good days. However, when comparing this questionnaire with his treatment notes, a chart note dated June 28, 2010 shows no depression, no panic, the claimant was neat, alert and cooperative, her speech was fluent and her thought process was engaged. Although she was still somewhat anxious and restless, again, Dr. Winders gave her a GAF score of 67, which is consistent with only 'mild' symptoms/limitation of function according to the DSM-IV. Dr. Winders even noted that the claimant was 'doing fairly well' . . . .").

The remainder of claimant's arguments, though peppered with "cherry-picking" and "erroneous credibility determination" phrases, doc. 10 at 20-24, in fact is simply evidence-reweighing in disguise. As mentioned, the Court cannot do that, but can only determine whether substantial evidence supports the ALJ's ruling (which is based on *his*

weighing of the evidence before him).[7] And it must do so in light of Marshall's ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a) ("you must bring to our attention everything that shows that you are blind or disabled."). She therefore has been required to present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform *any* job in the national economy. 42 U.S.C. § 423(d)(1)(A). Substantial evidence supports the ALJ's determination that she did not. *Marchant v. Comm'r of Soc. Sec.*, 2015 WL 457741 at * 2 (S.D. Ohio Feb. 3, 3015) (affirming denial of CIB benefits to ADHD, PTSD and bipolar claimant: "The issue is not whether the record could

---

[7] It must be remembered that, per SSR 96-4p, "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." *Id.*, quoted in *Smits v. Colvin*, 2015 WL 505465 at * 3 (E.D. Ky. Feb. 6, 2015). In that mental deficits -- presented in quest of entitlement dollars -- are so easily exaggerated, and the lion's share of the disability being argued here is mental-health based, it is no wonder that the ALJ found it "difficult to know one way or the other in this case because (INAUDIBLE) the medical is so confusing and contradictory, and so I don't know what to make of it. I spent an inordinate amount of time reviewing all this because it is just, it just was so contradictory. So I will spend more time on it and make a decision." Doc. 8-2 at 80. The ALJ's comprehensive written ruling shows that he did just that. Doc. 8-2 at 27-36.

support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence.").

## IV. CONCLUSION

Jennifer Wrene Marshall's case must be **DISMISSED WITH PREJUDICE.**

**SO REPORTED AND RECOMMENDED** this __6th__ day of April, 2015.

_J R Smith_
_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA